# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

      v.                                 Case No. 06-CR-327

HENRY BROWN,

        Defendant.

---

## RECOMMENDATION ON DEFENDANT'S PRETRIAL MOTIONS

---

### I. BACKGROUND

On December 12, 2006, a grand jury sitting the Eastern District of Wisconsin returned a one-count indictment, naming Henry Brown ("Brown") as the defendant. The indictment charged Brown with possession with intent to distribute more than five kilograms of cocaine. A warrant was issued for Brown's arrest the next day. However, the warrant was not executed until September 3, 2007, and Brown was not arraigned on the indictment until September 13, 2007. Trial was originally scheduled to be conducted before the Honorable J.P. Stadtmueller on December 10, 2007, but on December 4, 2007, Judge Stadtmueller re-set the trial date for January 22, 2008. On January 10, 2008, the defendant filed a motion to adjourn the trial date. Without ruling on the motion, Judge Stadtmueller recused himself from the case, and it was thereafter reassigned to the Honorable Charles N. Clevert, Jr.

On May 6, 2008, a grand jury returned a superseding indictment against Brown. Count One of the superseding indictment charges Brown with conspiracy to possess with intent to distribute and to distribute: cocaine, crack cocaine, marijuana, heroin, and fentanyl. Count Two charges Brown with aiding and abetting the possession with intent to distribute cocaine.

Judge Clevert adjourned the trial on several occasions. Trial is currently scheduled to commence before Judge Clevert on February 2, 2009, with a final pretrial conference scheduled to be conducted on January 23, 2009.

Currently pending before the court are two pretrial motions filed by the defendant: (1) a motion to quash search warrant and suppress evidence and (2) a motion to bar the use of a confidential informant at trial. Both motions are now fully briefed and are ready for resolution.

## II. DISCUSSION

### A. Motion to Quash Search Warrant and Suppress Evidence

The defendant has moved to suppress for use as evidence at his trial any evidence seized during the execution of "a search warrant . . . issued by Northern District of Illinois Magistrate Judge Jeffrey Cole [on November 16, 2006] for a one and a half story single family residence located at 1441 West Morris Avenue in Berkeley, Illinois." (Mot. ¶ 2.) According to the defendant, the search warrant was issued based on stale information and was therefore issued without probable cause.

More precisely, Brown asserts that the warrant applicant, federally deputized Detective David Baker of the Milwaukee Police Department, averred that from November 2003 through December 2005, a cooperating witness had purchased marijuana from a black male named "Hoop" who lives in Berkeley, Illinois. The defendant further states that

> [t]he affidavit went on to allege that from July 27, 2006, to August 5, 2006, the cooperating witness set up a narcotics transaction with "Hoop" and an individual named Troy. The cooperating witness met with Hoop on August 2, 2006, at which point Hoop was identified as Henry Brown. At that meeting, Hoop and the cooperating witness exchanged vehicles. Prior to that exchange, a GPS tracking device had been installed in the cooperating witness's car. Between August 2, 2006, and August 5, 2006, the GPS device indicated that the cooperating witness's vehicle was kept overnight at 1441 Morris Avenue in Berkeley, Illinois. The device also indicated that the vehicle departed from that address on August 5, 2006, on its way to Wisconsin. Around 4:00 p.m. on August 5, 2006, the Racine County Sheriff's office conducted a traffic stop of the cooperating witness's vehicle, which contained Troy Lewis and Markita Brown, along with 10 kilograms of cocaine.

2

Three months later, on November 5, 2006, the cooperating witness identified the house located at 1441 Morris Avenue in Berkeley, Illinois, as the house the witness had visited in the past to obtain drugs. The witness stated that Hoop lived at this address.

(Mot. ¶¶ 4-5.)

In support of his motion to quash the search warrant, the defendant asserts that

[t]he only rule with regard for the time within which a complaint for search warrant must be made is that it cannot be too remote. The passage of time affects the existence of probable cause. While there is no hard-and-fast rule as to when the passage of time extinguishes probable cause, in this case a full 103 days had passed between the alleged criminal activity and the issuance of the search warrant.

. . . [T]he facts supporting the underlying probable cause for this search warrant had grown stale by the time Detective Baker submitted his application and affidavit for search warrant.

(Mot. ¶¶ 8-9.)

In response, the government argues that the information presented in support of the warrant was not stale and that the warrant was therefore supported by probable cause. In the alternative, the government argues that, were this court to find the warrant to have been based on stale information, the court should nevertheless uphold the legality of the search based upon the good faith doctrine as set forth in *United States v. Leon*, 468 U.S. 897 (1984).

"A search warrant affidavit establishes probable cause when, based on the totality of the circumstances, it sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Curry*, 538 F.3d 718, 729 (7th Cir. 2008). The judge issuing the warrant "'need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit,'" but the judge "may not rely solely upon 'conclusory allegations' or a 'bare bones' affidavit' when issuing a warrant." *Id.* (citations omitted). When reviewing a search that was conducted pursuant to a warrant, the reviewing court "must afford 'great deference' to the issuing judge's conclusion" that probable cause to search existed. *See United States*

*v. Prideaux-Wentz*, 543 F.3d 954, 958 (7th Cir. 2008) (citation omitted). "Judges 'may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant.'" *Id*. at 961 (citations omitted).

With respect to the question of staleness, "the age of inculpatory information is only one factor that magistrates should consider in determining whether probable cause exists, and 'if other factors indicate that the information is reliable . . . the magistrate should not hesitate to issue the warrant.'" *United States v. Spry*, 190 F.3d 829, 836 (7th Cir. 1999) (quoting *United States v. Pless*, 982 F.2d 1118, 1125-26 (7th Cir. 1992)). "Passage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity." *Pless*, 982 F.2d at 1126. Probable cause can even exist months after the last known occurrence of suspected drug trafficking activity. *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991).

In the instant case, Detective Baker sought to obtain, inter alia, records and documents, which are items likely to be retained over time, relating to occupancy and control of the premises, relating to possession of firearms, relating to distribution of controlled substances and assets obtained therefrom, and relating to possible co-conspirators. Significantly, Detective Baker's affidavit described what could reasonably be viewed as an ongoing, continuous pattern of criminal activity on the part of Brown, which activity was related to the premises to be searched.

More precisely, in his affidavit Detective Baker noted that a cooperating witness ("CW-1") had informed agents that CW-1 had purchased marijuana in ten to twenty pound quantities at a time from "Hoop" (later identified as Henry Brown) from November 2003 through December 2005. CW-1 further told the agents that from early 2005 through December 2005, CW-1 also purchased kilograms of cocaine from Brown and "Troy" (later identified as Troy Lewis).

4

Detective Baker also described CW-1's contact with Henry Brown under the direction of law enforcement in late July and early August 2006. During that time period, CW-1 informed Lewis that CW-1 would like to purchase ten kilograms of cocaine and a counterfeit identification card. On August 2, 2006, CW-1 met with Brown at a location in Kenosha, Wisconsin, under the surveillance of law enforcement. CW-1 and Brown agreed to trade cars until the deal was completed. A search of the passenger compartment of the vehicle Brown provided to CW-1 revealed documents in the name of Henry Brown. Moreover, a GPS device was placed in CW-1's vehicle (which vehicle was provided to Brown) and the GPS indicated that the vehicle was kept overnight at 1441 Morris Avenue, Berkeley, Illinois between August 2 and August 5, 2006. The GPS also indicated that the August 5, 2006 trip to Wisconsin began at 1441 Morris Avenue, Berkeley, Illinois.

On August 5, 2006, CW-1 received a phone call from Lewis indicating that he was coming to Milwaukee with the cocaine, counterfeit ID, and CW-1's vehicle. The GPS device indicated that CW-1's vehicle left for Milwaukee from 1441 Morris Avenue, Berkeley, Illinois. Later that day, Racine County Sheriff's deputies stopped the vehicle on I-94 in Racine, Wisconsin. The driver of the vehicle, Troy Lewis, initially produced a fake ID, and the passenger, Markita Brown, stated she resided at 1441 Morris Avenue, Berkeley, Illinois. In the rear of the vehicle, deputies located a suitcase containing ten kilograms of cocaine.

Notably, Detective Baker set forth in his affidavit that on November 5, 2006, CW-1 pointed out to case agents that 1441 Morris Avenue, Berkeley, Illinois, was the house in which CW-1 had been in order to obtain drugs in the past. Indeed, CW-1 had been in that residence in early 2005 to obtain more than five pounds of marijuana from Brown. CW-1 also related that Henry Brown resided at that residence and identified a van parked in the driveway of the residence as one which Brown used previously to deliver cocaine and marijuana from Chicago to CW-1 in Milwaukee.

5

Finally, Detective Baker averred that, according to the Illinois Department of Transportation, Henry Brown listed his current address as 1441 Morris Avenue, Berkeley, Illinois.

And so, the bottom line is that Detective Baker's affidavit set forth sufficient information to show a long-standing drug dealing relationship between Brown and CW-1. Indeed, as recently as three months prior to the issuance of the search warrant, CW-1 had negotiated with Brown for the delivery of ten kilograms of cocaine; the cocaine had been delivered to Wisconsin; and the automobile in which it was transported had been kept overnight at Brown's residence (the place for which the warrant was issued) for several days immediately prior to the when the delivery was to take place. This scenario of events, coupled with CW-1's statement that he had previously obtained drugs from Brown at the Morris Street residence, was sufficient to support an inference that evidence of ongoing drug activity would likely be found at Brown's residence a mere two and a half months later. After all, the evidence showed that Brown had been dealing drugs from 2003 through August 2006. Why would he have stopped being a drug dealer after August 5, 2006, i.e., the date of the seizure of cocaine? Indeed, ten kilograms of cocaine is not a paltry amount. Having access to that amount of cocaine would suggest that Brown was no small-time dealer, but rather that he was in it for the long haul.

But, even assuming the warrant were viewed to be thin on probable cause due to the staleness of the information presented in the affidavit (a view that this court does not share), suppression would only be appropriate if the officer lacked good faith in relying on an invalidated search warrant. *See Leon*, 468 U.S at 920-22. Detective Baker's decision to seek a warrant is prima facie evidence that he was acting in good faith. *See United States v. Peck*, 317 F.3d 754, 757 (7th Cir. 2003). A defendant may rebut this prima facie evidence only by establishing that the warrant issuer "wholly abandoned his judicial role" or that "the affidavit submitted in support of the warrant was 'so lacking

in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005) (citations omitted). Suffice it to say that, in this court's opinion, neither of those showings have been made here.

In conclusion, it will be recommended that the defendant's motion to quash search warrant and suppress evidence be denied.

**B. Motion to Bar Use of Confidential Informant**

The defendant has also moved the court, "to enter an order barring the Government from using the testimony and evidence it improperly obtained from a confidential informant." (Mot. at 1.) As grounds, the defendant asserts that the government failed to obtain permission from the Wisconsin Department of Corrections, Division of Community Corrections ("WDOC/DCC"), before having CW-1 actively assist in the investigation that led to the defendant's arrest. The defendant alleges that because CW-1 was under the supervision of the WDOC/DCC at the time he assisted the government, the government's failure to obtain the WDOC/DCC's permission violated the Attorney General's Guidelines Regarding the Use of Confidential Informants ("the Guidelines"). The defendant also asserts that his "right to due process of law under the Fifth Amendment will be violated if the evidence improperly obtained by [CW-1] is introduced at the trial." (Mot. ¶ 7.)

The government responds that the court should deny the defendant's motion for the following reasons: (1) because CW-1 is a confidential witness, and not just a confidential informant, the Guidelines are not mandatory as to him, (2) because even if the Guidelines were mandatory in this instance, the defendant has not established that the government failed to comply with the Guidelines, (3) because even if the government failed to comply with the Guidelines, the defendant is not entitled to the relief he seeks, and (4) because the defendant fails to identify any federally protected liberty interest which has been violated under the Fifth Amendment.

7

The defendant avers that the government violated the section of the Guidelines concerning the use of confidential informants. That section of the Guidelines requires the government to "obtain the permission of a state or local prison, probation, parole, or supervised release official with the authority to grant such permission" if it is determined that an individual's role as a confidential informant would "violate the terms and conditions of a person's incarceration, probation, parole, or supervised release.[1] Guidelines, sec. II.D.5.a. Because the court finds that, even if the government failed to comply with the Attorney General's Guidelines, the exclusionary rule does not apply, the court need not address whether the government actually did violate the Guidelines.

Addressing a violation of the internal regulations of another government entity, the United States Supreme Court refused to apply the exclusionary rule at the criminal trial of a taxpayer accused of bribing an Internal Revenue Service ("IRS") agent based on a violation of the IRS regulations governing electronic monitoring. *United States v. Caceres*, 440 U.S. 741, 743, 745-46 (1979). In so holding, the Court noted that "[n]either the Constitution nor any Act of Congress" required the IRS regulation at issue. *Id.* at 744. The Court noted that while "[r]egulations governing the conduct of criminal investigations are generally considered desirable . . . a rigid application of an exclusionary

---

[1] Section II.D.5.a. of the Guidelines states that:

Prior to utilizing a state a local prisoner, probationer, parolee, or supervised releasee as a [confidential informant ("CI")], a Field Manager of a [Department of Justice Law Enforcement Agency ("JLEA")] shall determine if the use of that person in such a capacity would violate the terms and conditions of the person's incarceration, probation, parole, or supervised release. If the Field Manager has reason to believe that it would violate such terms and conditions, prior to using the person as a CI, the Field Manger or his or her designee must obtain the permission of a state or local prison, probation, parole, or supervised release official with authority to grant such permission, which permission shall be documented in the CI's files. If such permission is denied or it is inappropriate for operational reasons to contact the appropriate state or local official, the JLEA may seek to obtain authorization for the use of such individual as a CI from the state or local Court then responsible for the individual's incarceration, probation, parole, or supervised release.

8

rule to every regulatory violation could have a serious deterrent impact on the formulation of additional standards to govern prosecutorial police policies." The Court concluded that "[i]n the long run, it is far better to have rules like those contained in the IRS Manual, and to tolerate occasional erroneous administration . . . than either to have no rules except those mandated by statute, or to have them framed in a mere precatory form." *Id*. at 756-57.

"A court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law." *Id*. at 749. The Guidelines are internal operating procedures promulgated by the Attorney General's Office, and while the Guidelines are important, in that they "offer an element of consistency to the decision-making process, provide education for newcomers to the department, and can serve as a restraint on prosecutorial discretion," Ellen S. Podgor, *Department of Justice Guidelines: Balancing "Descretionary Justice"*, 13 CORNELL J.L. & PUB. POL'Y 167, 169 (2004), like the IRS regulations considered by the Supreme Court, the Guidelines are required by "neither the Constitution nor any Act of Congress, *see id*. at 744."[2] It therefore follows, for the reasons set forth in *Carceres*, that the exclusionary rule is not the appropriate avenue of relief for a violation of the Guidelines.

Nor is this a case in which the Due Process Clause of the Fifth Amendment is implicated. The Fifth Amendment states, in pertinent part, that "No person shall . . . be deprived of life, liberty, or property, without due process of law." Additionally, while "[t]he Fifth Amendment . . . does not contain an equal protection clause as does the Fourteenth Amendment which applies only to the states," the United States Supreme Court has held that "the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive [and] . . .

---

[2] The Guidelines are issued under the authority of the Attorney General as provided in 18 U.S.C. §§ 509, 510, and 533. Guidelines, Preamble.

discrimination may be so unjustifiable as to violate due process." *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). In his brief, the defendant appears to argue that the government selectively enforced its Guidelines in violation of the equal protection component of the Fifth Amendment's Due Process Clause, averring that "the Government cannot be permitted to selectively adhere to some of its policies while ignoring others." (Mot. ¶ 7.)

Typically, selective enforcement claims are "'concerned with governmental classifications that affect some groups of citizens differently than others.' Therefore, individuals pursuing equal protection challenges ordinarily 'allege that they have been arbitrarily classified as members of an 'identifiable group.'"" *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (citations omitted). However, Brown has not alleged that he is part of any group, much less a group treated differently than others by the federal government.

An equal protection claim can, in some circumstances, be sustained even if an individual does not allege class-based discrimination, but instead alleges he has been singled out as a "class-of-one." "A class-of-one equal protection claim is cognizable where an individual alleges that he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* (citation omitted). However, Brown has failed to set forth any facts that demonstrate to the court that he was treated differently from others similarly situated.

In failing to properly establish either a class-based or a class-of-one equal protection claim, the defendant does not set forth any liberty interest protected under the Fifth Amendment.

In conclusion, because the exclusionary rule is not the appropriate method of relief for a violation of the Guidelines (if such a violation occurred, and the court makes no such finding) and because the defendant has not set forth a cognizable Fifth Amendment claim, this court will

recommend that the defendant's motion to bar the use of the confidential informant's testimony be denied.

**NOW THEREFORE IT IS RECOMMENDED** that the defendant's motion to quash search warrant and suppress evidence (dkt # 76) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that the defendant's motion to bar use of confidential informant (dkt # 75) be **DENIED**;

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

**SO ORDERED** this 10th day of December 2008, at Milwaukee, Wisconsin.


/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge