# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                            **Case No. 06-CR-327**

**HENRY R. BROWN**
    **Defendant.**

## DECISION AND ORDER

Defendant Henry Brown moves for sentence modification pursuant to the First Step Act. For the reasons that follow, I grant his motion.

## I. FACTS AND BACKGROUND

On February 6, 2009, a jury found defendant guilty of conspiracy to distribute controlled substances, with the offense involving more than 5 kilograms of cocaine, as well as marijuana, crack cocaine, heroin, and fentanyl; and of aiding and abetting the possession with intent to distribute a controlled substance, with the offense involving 5 kilograms or more of cocaine. (R. 114; R. 208 at 20-22.) After denying various post-conviction motions, on February 7, 2011, Judge Clevert sentenced defendant to life in prison, the sentence then required by statute based on defendant's two prior felony drug convictions, followed by 10 years of supervised release. (R. 100, 150, 159.)

On January 17, 2017, pursuant to an executive grant of clemency, President Obama commuted defendant's sentence to 292 months' imprisonment, leaving intact the 10-year term of supervised release. (R. 198 at 4.) Defendant is currently serving the prison sentence at FCI Forrest City Low, with a projected release date of July 5, 2028.

On June 11, 2020, defendant filed a motion to reduce his prison sentence (R. 206), which he amended the following day (R. 208), raising two grounds for relief. First, he argued that he was eligible for a reduction because his crack cocaine conviction was a "covered offense" under § 404 of the First Step Act, which permits district courts to reduce sentences in such cases consistent with the modified statutory ranges provided under the Fair Sentencing Act of 2010. Second, he argued that "extraordinary and compelling reasons" supported a reduction under 18 U.S.C. § 3582(c)(1)(A), as amended by § 603 of the First Step Act. Specifically, he indicated that given other statutory changes the applicable mandatory minimum would be just 10 years, rather than life. (R. 208 at 1.)

I directed the government to respond (R. 207), and on June 19, 2020, the government filed a response arguing that defendant was not eligible for relief under either theory (R. 209). Defendant replied on June 26, 2020 (R. 210) and submitted supplemental authority on July 16, 2020 (R. 212).

On August 15, 2020, defendant requested leave to file a supplemental First Step Act petition, raising a claim for release based on the COVID-19 pandemic and his health conditions. (R. 213.) I granted leave to supplement and directed further briefing. (R. 214.) On August 21, 2020, defendant filed another supplement (R. 215), which I granted leave to file, further extending the briefing schedule (R. 216). On August 24, 2020, the government filed a response opposing modification. (R. 218.) On September 8, 2020, defendant filed a motion for an order requiring the Bureau of Prisons ("BOP") to produce the video recording of an episode in which he passed out in the recreation area at FCI Forrest City. (R. 219.) Finally, on October 22, 2020, he filed a request for leave to file a reply brief instanter. (R. 220.)

2

## II.  SENTENCE MODIFICATION STANDARDS

**A.     Retroactive Fair Sentencing Act (§ 404)**

Among other changes, the First Step Act of 2018 made retroactive the statutory penalty modifications for crack cocaine offenses adopted as part of the Fair Sentencing Act of 2010. Under the Fair Sentencing Act, the threshold quantity triggering § 841(b)(1)(A)(iii)—the 10 years to life range—increased from 50 grams to 280 grams.  The quantity triggering § 841(b)(1)(B)(iii)—the 5 to 40 year range—increased from 5 grams to 28 grams.  And § 841(b)(1)(C), which provides for a penalty of up to 20 years in prison, now (also) covers convictions involving quantities between 5 grams and 28 grams.  See United States v. Hogsett, No. 19-3465, 2020 U.S. App. LEXIS 38062, at *8 (7th Cir. Dec. 7, 2020).

The First Step Act gives a court discretion to reduce the sentence of a defendant previously convicted of a "covered offense." United States v. Shaw, 957 F.3d 734, 736 (7th Cir. 2020); see also United States v. Sutton, 962 F.3d 979, 986 (7th Cir. 2020).  A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." Shaw, 957 F.3d at 736 (quoting § 404(a) of the First Step Act).  The offense must also have been committed before August 3, 2010.  Id.

A judge considering a motion for a reduced sentence under the First Step Act is faced with two questions.  The first is whether the defendant is eligible for a reduction.  Id.  In answering this question, the court looks solely at the statute of conviction, rather than the defendant's actual conduct.  See United States v. Bethany, 975 F.3d 642, 651 (7th Cir. 2020); see also Hogsett, 2020 U.S. App. LEXIS 38062, at *5.  Second, if the defendant is eligible, the court must determine whether it should reduce the sentence in the exercise of discretion.

3

Shaw, 957 F.3d at 736. In making this determination, the court will rely on the familiar 18 U.S.C. § 3553(a) framework, considering the need for the sentence imposed to provide just punishment, deterrence, public protection, and correctional treatment. See id. at 741.

**B.     Compassionate Release (§ 603)**

The First Step Act also permits the district court to grant, on a defendant's motion, what is commonly known as "compassionate release." Previously, only the BOP could make such a motion. See, e.g., United States v. Egebrecht, No. 2:17-cr-00007-JRS-CMM-01, 2020 U.S. Dist. LEXIS 113671, at *4 (S.D. Ind. June 29, 2020) (discussing § 603 of the First Step Act).

The statute now provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

The statute contains three requirements: (1) the defendant must first make a request to the warden before applying to the court; (2) the defendant must then demonstrate to the court that "extraordinary and compelling reasons" warrant a reduction in his sentence; and (3) the court must determine whether, even if such reasons are shown, a reduction of the sentence would be inconsistent with the applicable § 3553(a) factors and the need to protect the public.

4

See United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

The statute does not define the term "extraordinary and compelling reasons." Rather, Congress instructed the Sentencing Commission, in promulgating general policy statements regarding the sentence modification provisions in § 3582(c)(1)(A), to describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. See 28 U.S.C. § 994(t).[1] The Commission's policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)    (A) extraordinary and compelling reasons warrant the reduction . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The commentary to the policy statement indicates that extraordinary and compelling reasons exist under these circumstances:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—

---

[1] Congress did state that: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

5

> > (I) suffering from a serious physical or medical condition,
>
> > (II) suffering from a serious functional or cognitive impairment, or
>
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Commission has not updated the policy statement, which purports to require a motion from the director of the Bureau of Prisons, see U.S.S.G. § 1B1.13 cmt. n.4, since the passage of the First Step Act, which allowed defendants to bring their own motions. Accordingly, "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of §3582(c)(1)(A) does not curtail a district judge's discretion." United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020); see also United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of

6

extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

Giving the statutory terms their ordinary meaning, a defendant seeking compassionate release must demonstrate that his situation is extraordinary, i.e., beyond what is usual, customary, regular, or common, and his need for release compelling, i.e., irreparable harm or injustice will result if relief is not granted. United States v. Scott, 461 F. Supp. 3d 851, 862 (E.D. Wis. 2020); see also Gunn, 980 F.3d at 1180 (noting that the Commission's analysis can guide discretion without being conclusive). In the context of the COVID-19 pandemic, courts have found that modification may be warranted if the prisoner demonstrates that he is particularly vulnerable to the virus based on his age, health status, or other specific circumstances; conversely, courts have tended to deny compassionate release requests based on general concerns about possible exposure in prison. E.g., United States v. Dover, No. 14-CR-196, 2020 U.S. Dist. LEXIS 133340, at *16-17 (E.D. Wis. July 28, 2020); see also United States v. Thomas, No. 1:11-CR-22, 2020 U.S. Dist. LEXIS 172963, at *6-7 (N.D. Ind. Sept. 22, 2020) (explaining that § 3582(c)(1)(A) contemplates a sentence reduction based on the particular circumstances of where the defendant is housed and his personal health conditions). Courts have also concluded that an enormous disparity between the sentence a defendant would receive today and the term actually imposed under "old" law can constitute an extraordinary and compelling reason for relief under § 3582(c)(1)(A). See, e.g., United States v. McCoy, No. 20-6821, 2020 U.S. App. LEXIS 37661, at *28 (4th Cir. Dec. 2, 2020).

Finally, if the court decides that extraordinary and compelling reasons have been shown, it must also consider the applicable § 3553(a) factors to determine whether the sentence should

7

be modified. In some cases, a court may find that the relevant § 3553(a) factors outweigh the extraordinary and compelling reasons warranting compassionate release and/or that release would undermine the goals of the original sentence. United States v. Black, No. 1:11-cr-00083, 2020 U.S. Dist. LEXIS 142523, at *11 (S.D. Ind. Aug. 10, 2020); United States v. Bartlett, No. 06-CR-273, 2020 U.S. Dist. LEXIS 101393, at *13-14 (E.D. Wis. June 9, 2020). The court must also consider whether release would pose "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

### III. DISCUSSION

**A.     Section 404**

Defendant argues that he was convicted of a "covered offense" in count one, which charged a conspiracy to traffic a number of substances, including crack cocaine. He notes that the indictment did not allege, and the jury did not find, a specific amount of crack cocaine; accordingly, he contends, the statutory maximum the verdict authorized the court to impose was 20 years. (R. 208 at 4.) He further contends that count one involves various other substances, including marijuana, and under the "lesser included offense rule" the lowest statutory range would be set by § 841(b)(1)(D), which authorizes a sentence of up to 5 years. (R. 208 at 5.)

Defendant overlooks the fact that the jury specifically found that count one involved 5 kilograms or more of cocaine, triggering the penalties in § 841(b)(1)(A)(ii). Defendant cites United States v. Edwards, No. 95 CR 508-5, 2019 U.S. Dist. LEXIS 146571 (N.D. Ill. Aug. 8, 2019), where the court granted relief under the First Step Act in a case in which the defendant was convicted of a drug trafficking conspiracy involving a variety of substances. But in that pre-

8

Apprendi case, the jury made no drug weight determination as to any of the substances involved.

The government opposes relief under § 404, arguing that the penalties for neither the cocaine offense or the crack cocaine offense were lowered by the Fair Sentencing Act. (R. 209 at 3.) Ultimately, I need not decide the motion under § 404, as I find it appropriate to grant relief under § 603.

**B.      Section 603**

   **1.      Exhaustion**

On January 3, 2020, defendant made a request to the warden for release under § 3582. (R. 208 at 2, 16.) The warden denied the request on March 30, 2020, and more than 30 days have passed. (R. 209 at 6; R. 218 at 4; R. 218-1.) Defendant has therefore satisfied the exhaustion requirement.

   **2.      Extraordinary and Compelling Reasons**

Defendant originally faced a mandatory life sentence under 21 U.S.C. §§ 841(b)(1)(A) & 851, given the amount of cocaine involved in the offense and his two prior convictions for a "felony drug offense." However, the First Step Act also amended the recidivist sentencing provisions of § 841(b)(1). Specifically, the Act narrowed the category of offenses that triggered the higher penalties. Now, a prior conviction must be a "serious drug felony"—rather than a "felony drug offense"—to increase the penalties under § 841(b)(1). United States v. Godinez, 955 F.3d 651, 654-55 (7th Cir. 2020).

The term "serious drug felony" means an offense described in 18 U.S.C. § 924(e)(2) for which (A) the offender served a term of imprisonment of more than 12 months; and (B) the

9

offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense. 21 U.S.C. § 802(57). Section 924(e)(2) defines a "serious drug offense" as (i) an offense under the Controlled Substances Act for which a maximum term of imprisonment of 10 years or more is prescribed by law; or (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance for which a maximum term of imprisonment of ten years or more is prescribed by law. 18 U.S.C. § 924(e)(2)(A).

Neither of defendant's prior convictions would qualify today. On October 6, 1997, the district court for the Western District of Texas sentenced defendant to 48 months in prison on his guilty plea to using a communications facility to facilitate the commission of a drug felony, contrary to 21 U.S.C. § 843. (R. 208 at 26; R. 100; PSR ¶ 47.) The maximum penalty for a violation of 21 U.S.C. § 843 is 4 years. On December 8, 1998, an Illinois state court sentenced defendant to 4 years in prison on his conviction of unlawful possession of cannabis with intent to distribute, contrary to ILCS 550/5(e), a class 2 felony. (R. 208 at 25; R. 100; PSR ¶ 46). The penalty range for a class 2 felony is 3 to 7 years in prison. See 730 ILCS 5/5-4.5-35(a). Accordingly, neither prior conviction carries the necessary maximum penalty to qualify under the statute as amended.[2] The mandatory minimum penalty would thus be 10 years, rather than life.

---

[2] Defendant also argues that the priors do qualify because they are more than 15 years old. (R. 208 at 7.) However, the statute refers to 15 years from release on the prior sentence to commencement of the instant offense. Here, defendant commenced the offense charged in count one in 2003 (R. 208 at 18), which would necessarily be within 15 years of his release on prison sentences imposed in 1997 and 1998. Defendant also appears to rely on the sentences actually imposed in the prior cases, but § 924(e)(2) references the maximum prescribed by law. In any event, neither prior carried the necessary maximum sentence, as the government appears to concede.

10

While Congress did not make this portion of the First Step Act retroactive across the board, courts may consider such legislative changes in "conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i)." McCoy, 2020 U.S. App. LEXIS 37661, at *32.[3] As is pertinent here, numerous courts have concluded that defendants sentenced to life under the old version of § 841(b)(1)(A) may qualify for relief based on a gross disparity with the sentence they would face today. See, e.g., United States v. Williams, No. 5:12-cr-14, 2020 U.S. Dist. LEXIS 179932, at *21-24 (W.D. Va. Sept. 29, 2020) (granting compassionate release where a defendant sentenced to mandatory life would now face a 10-year minimum); United States v. Day, No. 1:05-cr-460-AJT-1, 2020 U.S. Dist. LEXIS 133586, at *31-32 (E.D. Va. July 23, 2020) (granting relief where mandatory sentence would now be 15 years rather than life); United States v. Ledezma-Rodriguez, 3:00-CR-00071, 2020 U.S. Dist. LEXIS 123539, at *12 (S.D. Iowa July 14, 2020) (granting relief where the defendant's mandatory sentence on a drug count would be 10 years rather than life); see also United States v. Vigneau, No. 97-cr-33-JJM-LDA, 2020 U.S. Dist. LEXIS 129768, at *11 (D.R.I. July 21, 2020) ("Courts . . . have determined that unusually long sentences by today's standards could support an 'extraordinary and compelling' reason to reduce a sentence.").

As indicated above, courts have also granted compassionate release based on the COVID-19 pandemic. Defendant is housed at FCI Forrest City, which experienced one of the worst outbreaks among BOP facilities. (R. 210 at 7-8; R. 213 at 4-5.) He also suffers from a

---

[3] I agree with the government that relief under § 3582(c)(1) must be based on an individualized assessment, rather than the mere fact that the statutory penalties have been modified. (R. 209 at 8.) As the Fourth Circuit persuasively explained in McCoy, however, nothing in the statutory scheme suggests that a court may not, in exercising its discretion under § 3582(c)(1)(A), consider "the dramatic degree to which" a particular defendant's sentence exceeds what Congress "now deems appropriate." 2020 U.S. App. LEXIS 37661, at *36.

11

number of underlying health conditions, including hypertension, obesity, and type 2 diabetes, which increase his risk of severe illness.[4] (R. 210 at 8; R. 213 at 8; R. 215 at 21-23; R. 218 at 8; R. 218-2 at 30-31, 35, 37, 38, 42, 51, 54, 57; R. 220 at 5.) He further indicates, in his supplemental motion, that in July 2020 he experienced a near fatal event where he went into cardiac arrest and had to be resuscitated.[5] He subsequently tested positive for COVID-19, after which he spent a month in isolation. (R. 213 at 2; R. 215 at 4, 7, 9-20; R. 218-2 at 1-23.) While he has since tested negative, he notes the possibility of contracting the virus more than once. (R. 213 at 6.) Finally, defendant notes a more recent diagnosis of a heart ailment, atrial fibrillation, for which he takes additional medications. (R. 220 at 6, 26, 32-33.)

In response, the government notes that defendant recovered from his infection, and that there is no evidence supporting his claimed fear of re-infection. (R. 218 at 9-10, 12.) The government further notes that conditions at FCI Forrest City have improved since defendant filed the motion. (R. 218 at 10.)

---

[4] The CDC indicates that persons with obesity and type 2 diabetes are at increased risk, and those with hypertension might be at increased risk for severe illness from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited December 16, 2020). Defendant also suffers from sleep apnea. Although the CDC has not recognized this condition, some evidence suggests that it may also be a risk factor, see, e.g., United States v. Kwok-Ching Yu, No. 90 Cr. 47-6 (AT), 2020 U.S. Dist. LEXIS 220458, at *5 (S.D.N.Y. Nov. 23, 2020), and several courts have granted relief based on this condition in conjunction with other risk factors, such as obesity and/or hypertension. See United States v. Johnson, No. 03-20013-01-JWL, 2020 U.S. Dist. LEXIS 187755, at *5-6 (D. Kan. Oct. 9, 2020) (collecting cases).

[5] The government indicates that nothing in the medical records reflect that defendant needed to be revived. (R. 218 at 9.) Defendant asks the court to order the BOP to produce the video recording of the incident. (R. 219.) I need not resolve this dispute in order to decide the motion. I accordingly deny defendant's motion to produce as moot.

12

While the best available evidence from the CDC suggests that persons who have recovered from COVID-19 enjoy immunity for a period of time, it may not last indefinitely. The CDC indicates:

> Despite millions of SARS-CoV-2 infections worldwide and in the United States, to date, surveillance and investigations have thus far demonstrated few confirmed cases of re-infection. Currently, it is unknown if recovered persons are definitively immune to SARS-CoV-2 re-infection because biologic markers of immunity have not been correlated with protection from infection in humans. However, available evidence suggests that most recovered individuals would have a degree of immunity for at least 3 months following initial diagnosis of COVID-19. If implemented with current safety measures to prevent SARS-CoV-2 transmission (i.e., wear masks, stay 6 feet away from others whenever possible, and wash hands regularly), the risks of potential SARS-CoV-2 transmission from recovered persons are at this time likely outweighed by the personal and societal benefits of avoiding unnecessary quarantine. However, there could be scenarios in which the risk of re-infection and potential transmission may be deemed high enough to warrant quarantine of the exposed individual who has recovered from confirmed SARS-CoV-2 infection in the past 3 months.[6]

While the arrival of a vaccine provides hope that the end of the pandemic is in sight, it is unclear when prisoners might be eligible for vaccination. And, given the realities of prison life, social distancing and other hygienic measures designed to reduce the chances of transmission are simply not possible in prison. See United States v. Ramsey, No. 18-CR-163, 2020 U.S. Dist. LEXIS 118681, at *9 (E.D. Wis. July 7, 2020) (citing CDC materials). Thus, I cannot conclude that defendant's risk of reinfection is negligible.

Further, while the situation at FCI Forrest City is not as dire as it was several months ago, COVID-19 remains a problem. In reply, defendant attaches memos from the warden documenting another increase in positive tests. (R. 220 at 14-17.) The most recent data from the BOP show 98 prisoners positive, 15 staff positive, 0 inmate deaths, 0 staff deaths, 607

---

[6] https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (last visited December 16, 2020).

13

inmates recovered, and 4 staff recovered at FCI Forrest City Low.[7]

In United States v. Hicks, No. 18-CR-227, 2020 U.S. Dist. LEXIS 213100, at *17 (E.D. Wis. Oct. 7, 2020), I rejected the notion that a prisoner who had recovered from COVID-19 can never demonstrate extraordinary and compelling reasons, instead endorsing an individualized determination, which would include consideration of the prisoner's specific medical problems and their severity, the course of his recovery from the virus, whether he displayed any lingering symptoms or effects, and the conditions at his particular facility. Those factors support release in this case.

First, while the parties dispute whether defendant needed to be revived on July 1, 2020, the medical records describe a serious event. Defendant was found on the ground in the recreation area basketball court, awake but non-coherent. (R. 218-2 at 15.) Witnesses indicated that he appeared to be having seizure like activity, then passed out. (R. 218-2 at 21.) An EKG showed atrial flutter/tachycardia. (R. 218-2 at 20.) Subsequent notes indicate that he continued to complain of fatigue/weakness for at least 10 days. (R. 218-2 at 11.) He remained in isolation for a month. (R. 218-2 at 1.)

Second, defendant suffers from a number of medical conditions that increase his risk of severe illness from COVID-19. As courts have recognized, persons with such co-morbidities are at even greater risk. See, e.g., United States v. Beam, No. 4:17-cr-00463-MHH-GMB-1, 2020 U.S. Dist. LEXIS 233265, at *19-20 (N.D. Ala. Dec. 11, 2020) (obesity, diabetes, and hypertension); United States v. Hayes, No. 09 CR 1032, 2020 U.S. Dist. LEXIS 118325, at *6 (N.D. Ill. July 7, 2020) (diabetes, hypertension, and obesity); United States v. Smith, No.

---

[7]https://www.bop.gov/coronavirus/ (last visited December 17, 2020).

15-cr-30039, 2020 U.S. Dist. LEXIS 98878, at *13-14 (C.D. Ill. June 5, 2020) (obesity, hypertension, diabetes, and sleep apnea). Third, defendant appears to be experiencing developing health issues, including a heart problem. Finally, while conditions at FCI Forrest City are improved, COVID-19 remains present in the facility, at relatively high levels. As indicated, whatever immunity defendant may have after his recovery may not last until the virus is eradicated.

Based on all of these factors—the dramatic change in defendant's sentencing range, his serious health conditions, and the continuing threat of infection at his facility—I find that defendant has demonstrated extraordinary and compelling reasons for sentence modification. See United States v. Hope, No. 90-cr-06108-KMW-2, 2020 U.S. Dist. LEXIS 86395 (S.D. Fla. Apr. 10, 2020) (granting release based on similar combination of factors). I thus turn to the § 3553(a) factors to determine whether the sentence should be reduced.

### 3. Section 3553(a) Factors

As the government notes, defendant committed a serious offense, which spanned several years and involved 50 kilograms of cocaine, 182 kilograms of marijuana, and hundreds of thousands of dollars in proceeds. (R. 218 at 11; PSR ¶ 28.) He also has several prior convictions, including two previous drug cases, as well as a history of using false names. (R. 218 at 11; PSR ¶¶ 19, 22, 44-48.) The government contends that while President Obama was warranted in reducing the life sentence, a further reduction is unwarranted. I disagree.

While the offense was a serious one, it did not involve violence. Police found a rifle when searching a residence associated with defendant (PSR ¶¶ 19, 35), but there is no indication that he used or threatened to use the weapon. Defendant has now served more than 13 years of real time custody; factoring in good time, he has completed about 2/3 of the sentence after

15

commutation.  Reducing the sentence at this point would not unduly depreciate the seriousness of the offense or fail to provide just punishment.  The time defendant has served is also several times longer than his previous prison sentences of 4 years (PSR ¶¶ 46, 47) and thus sufficient to provide deterrence.  See Ramsey, 2020 U.S. Dist. LEXIS 118681, at *13 ("Reducing the sentence to time served will still result in a longer term than defendant had previously served, producing sufficient deterrence.").

Finally, granting release now will not endanger the public.  Defendant's prior record is relatively modest.  In addition to the two drug cases, he has convictions for unlawful use of a credit card in 1994 and misdemeanor battery cases in 1996 and 2006.  (PSR ¶¶ 44, 45, 48.) He is now 50 years old, an age when, statistically, recidivism rates significantly decline.  See U.S. Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders, at 23 (Dec. 2017) (noting that recidivism rates for defendants released in their fifties are less than half that of defendants released in their twenties).  He has completed programming and avoided serious discipline while imprisoned, which is all the more laudable given that, for part of that time, he had no realistic hope for release.  (R. 208 at 11, 40.)  He also has significant family and community support based on the numerous letters submitted to the court (R. 208 at 11, 41-80), as well as a comprehensive reentry plan, living with his sister  (R. 210 at 8) and a line on a transitional jobs program (R. 208 at 79).

## IV.  CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion to reduce sentence, as amended (R. 206, 208) is granted as stated herein, and his prison sentence is reduced to time served.  All other terms and conditions of the sentence remain as fixed.  An amended judgment

16

shall issue consistent with this order.

**IT IS FURTHER ORDERED** that defendant's motion to consider supplemental authority (R. 212) is granted.

**IT IS FURTHER ORDERED** that the government's motion to seal (R. 217) is granted.

**IT IS FURTHER ORDERED** that defendant's motion for production (R. 219) is denied as moot.

**FINALLY, IT IS ORDERED** that defendant's motion for leave to file a reply brief (R. 220) is granted.

Dated at Milwaukee, Wisconsin, this 17th day of December, 2020.

/s Lynn Adelman
LYNN ADELMAN
District Judge